UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>REAL PROPERTY KNOWN AS 531 6TH AVENUE, FOX ISLAND, WASHINGTON 98333, TOGETHER WITH ALL APPURTENANCES, FIXTURES, ATTACHMENTS, AND IMPROVEMENTS, THERETO AND THEREUPON,<br><br>Defendant. | NO.  CV24-1510<br><br>**VERIFIED COMPLAINT FOR FORFEITURE *IN REM*** |

COMES NOW the United States, by and through its undersigned counsel, and alleges:

## I.       NATURE OF THE ACTION

1.       This is a civil action *in rem*, brought to enforce the provision of 18 U.S.C. § 981(a)(1)(C) for forfeiture of property which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1343 (Wire Fraud), and to enforce the provision of 18 U.S.C. § 981(a)(1)(A) for forfeiture of property involved in a transaction or attempted

Verified Complaint for Forfeiture *in Rem* - 1
*United States v. Real Property at 531 6TH Avenue, Fox Island, WA.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

transaction in violation of 18 U.S.C. § 1956 (Money Laundering), or any property traceable to such property.

## II.   PLAINTIFF AND DEFENDANT *IN REM*

2.      The Plaintiff is the United States of America.

3.      The defendant is the real property known as 531 6th Avenue, Fox Island, Washington, 98333, legally described as follows:

ALL THAT PART OF LOT 4 OF A.J. MILLER'S PLAT OF SYLVAN, ACCORDING TO PLAT RECORDED IN BOOK 6 OF PLATS AT PAGE(S) 107, IN PIERCE COUNTY, WASHINGTON, DESCRIBED AS FOLLOWS:
BEGINNING ON THE WEST LINE OF LOT 4 AT A POINT 843 FEET NORTH OF THE SOUTHWEST CORNER OF SAID LOT 4;
THENCE EAST PARALLEL WITH THE SOUTH LINE OF SAID LOT 4, A DISTANCE OF 258.66 FEET, MORE OR LESS, TO THE EAST LINE OF SAID LOT 4;
THENCE NORTH ON SAID EAST LINE 108 FEET;
THENCE WEST PARALLEL WITH THE SOUTH LINE OF SAID LOT 4 TO THE WEST LINE THEREOF;
THENCE SOUTH ALONG THE WEST LINE OF SAID LOT 4, 108 FEET TO THE POINT OF BEGINNING.
EXCEPT NORTH SHORE ROAD.
SITUATE IN THE COUNTY OF PIERCE, STATE OF WASHINGTON.

4.      The foregoing real property, together with all appurtenances, fixtures, attachments, and improvements, thereto and thereupon, is hereinafter referred to as the "Defendant Property."

5.      The listed owner of the Defendant Property is John S. Winslow.

## III.   JURISDICTION AND VENUE

6.      This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and has jurisdiction over an action for forfeiture under 28 U.S.C. § 1355(a).

7.      This Court has *in rem* jurisdiction over the Defendant Property under 28 U.S.C. § 1355(b).

Verified Complaint for Forfeiture *in Rem* - 2
*United States v. Real Property at 531 6TH Avenue, Fox Island, WA.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because the acts or omissions giving rise to the forfeiture occurred in this district.

9.      Pursuant to 18 U.S.C. § 985(a) and Supplemental Admiralty and Maritime Claims Rule G(3)(a) of the Federal Rules of Civil Procedure, all civil forfeitures of real property and interests in real property shall proceed as judicial forfeitures.

10.     Pursuant to 18 U.S.C. § 981(f), all right, title, and interest in the Defendant Property vests in the United States at the time of the acts giving rise to the forfeiture.

11.     Pursuant to Supplemental Rule G(2)(f), facts in support of a reasonable belief that the United States will be able to meet its burden of proof at trial are as follows and have been verified by the attached Verification of Special Agent (SA) Linh Dang of the Internal Revenue Service, Criminal Investigation (IRS-CI).

## IV.     APPLICABLE LAW

### A.     Statutes

12.     Pursuant to 18 U.S.C. § 1343, it is unlawful to commit Wire Fraud. Section 1343 states in pertinent part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to transmit by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under [Title 18] or imprisoned not more than 20 years, or both…

*See* 18 U.S.C. § 1343.

13.     Wire Fraud (18 U.S.C. § 1343) is a type of "specified unlawful activity." Pursuant to 18 U.S.C. § 1956(c)(7), the term "specified unlawful activity" means, among other things, "any act or activity constituting an offense listed in section 1961(1) of [Title 18] …" *See* 18 U.S.C. § 1956(c)(7)(A). Section 1961(1) of Title 18, United States Code, includes Wire Fraud (18 U.S.C. § 1343) in its list of offenses.

Verified Complaint for Forfeiture *in Rem* - 3
*United States v. Real Property at 531 6ᵀᴴ Avenue, Fox Island, WA.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

//

14.     Pursuant to 18 U.S.C. § 1956, it is unlawful to commit Money Laundering. Section 1956 states in pertinent part:

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—
>
> *     *     *
>
> (B) knowing that the transaction is designed in whole or in part--
>
>    (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; …
>
> shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both…

*See* 18 U.S.C. § 1956(a)(1).

15.     Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of … any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of [Title 18]), or a conspiracy to commit such offense," is subject to civil forfeiture to the United States.

16.      Pursuant to 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction or an attempted transaction in violation of section 1956 … of [Title 18], or any property traceable to such property," is subject to civil forfeiture to the United States.

## B.     Tracing Principles

17.     In *United States v. Banco Cafetero Panama*, 797 F.2d 1154 (2d Cir. 1986), the Second Circuit discussed three accounting principles that can be used to trace tainted funds that have been commingled with untainted funds through bank accounts. *Id.* at 1157-62. The Ninth Circuit cited *Banco Cafetero* approvingly in *United States v. Laykin*,

Verified Complaint for Forfeiture *in Rem* - 4
*United States v. Real Property at 531 6TH Avenue, Fox Island, WA.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

886 F.2d 1534, 1541 (1989). With the "drugs-in, last-out rule," also referred to as the "lowest intermediate balance rule" or "LIBR," the untainted funds are deemed to be withdrawn first, such that the tainted funds are deemed withdrawn only when all untainted funds have been exhausted. *Banco Cafetero*, 797 F.2d at 1159. As the Court explained, "[i]f $100 from a drug sale is deposited into an active account," then the contents of the account are considered "to be 'traceable proceeds' to the extent of $100 as long as the account balance never falls below that sum." *Id.* As a practical matter, this has the effect of ensuring that at least some portion of the tainted funds remain in the account until the balance is reduced to zero.

18.     Another accounting method discussed in *Banco Cafetero* is referred to as "drugs-in, first-out." Under this approach, the "traceable proceeds" are deemed to be any one withdrawal (or any asset purchased with such withdrawal), up to the amount of the tainted funds deposited into the account. *Id.* For example, if $100 in drug proceeds is deposited into the account, the "traceable proceeds" would be *any* withdrawal, or any asset purchased with such withdrawal, up to the amount of the $100. *Id.* (emphasis added). Although the *Banco Cafetero* Court did not specifically discuss the accounting principles referred to as LIFO and FIFO, both LIFO and FIFO are somewhat similar to "drugs-in, first-out" accounting methodology. Under LIFO, which stands for "last in, first out," the most recent funds deposited to an account are deemed to be the first funds withdrawn. Under FIFO, which stands for "first in, first out," the first funds deposited are deemed to be the first funds withdrawn.

19.     A third approach, referred to as the "pro rata" or "averaging" approach, considers any traceable proceeds to be a pro rata share of any withdrawal from the account (or purchase from the account), with the share determined by the ratio of dirty to clean funds in the account immediately after the deposit. *Banco Cafetero*, 797 F.2d at 1159.

//

Verified Complaint for Forfeiture *in Rem* - 5
*United States v. Real Property at 531 6TH Avenue, Fox Island, WA.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## V.     FACTS

**A.     Overview of Winslow's Wire-Fraud Scheme and Money Laundering**

20.     During the relevant time period, Winslow resided in Gig Harbor, Washington, and in the Defendant Property. Victim 1 resided in Silverdale, Washington.

21.     The United States alleges that John S. Winslow was a financial advisor at a financial services firm (the "Financial Services Firm" or the "Firm") from September 2013 to December 2021, when the Firm terminated his employment. Prior to his termination, Winslow worked for the Firm in Gig Harbor, Washington.

22.     As a financial advisor at the Financial Services Firm, Winslow managed the brokerage accounts that Victim 1 held with the Firm. As Winslow knew, Victim 1 was an elderly widow with no immediate family members living in the area. Winslow gained the trust of Victim 1 and told her she did not need to review her accounts. Winslow misled Victim 1 about what he was doing with her money.

23.     In July of 2017, Winslow began moving funds from Victim 1's bank accounts outside the Firm to his own accounts via checks and wire transfers. Beginning in August of 2018, Winslow began liquidating Victim 1's mutual funds and securities held in Victim 1's brokerage accounts with the Financial Services Firm. Winslow then transferred Victim 1's funds to Victim 1's outside bank accounts and/or brokerage accounts. As a financial advisor with the Firm, Winslow knew and intended that by moving Victim 1's funds outside her accounts at the Financial Services Firm, those funds would be outside the Financial Services Firm's surveillance system.

24.     Winslow did not move Victim 1's funds from her accounts at the Financial Services Firm *directly* into Winslow's own bank accounts. Rather, Winslow moved, and caused Victim 1 to move, Victim 1's funds from her accounts at the Financial Services Firm, through her bank accounts, or through her Vanguard brokerage account. Winslow's layering of transactions is consistent with an attempt to conceal or disguise the nature,

Verified Complaint for Forfeiture *in Rem* - 6
*United States v. Real Property at 531 6TH Avenue, Fox Island, WA.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

location, source, ownership, or control of the wire fraud proceeds he had obtained from Victim 1.

25.     Similarly, Winslow never moved Victim 1's funds *directly* from her Vanguard account to his bank accounts. Instead, beginning in the fall of 2020, Winslow started buying one-ounce American Eagle Gold Coins from an online gold retailer ("Gold Retailer #1") using Victim 1's funds from her Vanguard account. Winslow then sold most of these one-ounce American Eagle Gold Coins to a brick-and-mortar gold retailer in the Western District of Washington ("Gold Retailer #2"). Finally, Winslow deposited the checks payable to him from Gold Retailer #2 into his bank accounts.

26.     By devising and executing this wire-fraud scheme, and by laundering the proceeds of this scheme, Winslow stole approximately $920,483 from Victim 1.

27.     Once Winslow had moved Victim 1's funds into his own bank accounts, Winslow used those funds for his own benefit. Winslow used Victim 1's money to make the down payment on the Defendant Property, and to make mortgage payments on the Defendant Property. Additionally, Winslow used Victim 1's funds to remodel and make other improvements to the Defendant Property, such as by purchasing a hot tub, landscaping his backyard, and upgrading the appliances.

28.     Winslow also spent Victim 1's funds on other personal expenses that benefitted himself. These expenditures included, among other things, dining out, paying a family member's college tuition, and purchasing a vehicle as well as a diamond necklace.

29.     To conceal his misconduct, Winslow made false and misleading statements regarding his communications with Victim 1 in the Financial Services Firm's client file for Victim 1. Winslow made entries that falsely indicated Victim 1 initiated the sale of securities to cover various expenses, such as medical bills, remodeling expenses, and yard work. In truth, these funds were transferred to Winslow. For example, on November 8, 2019, Winslow made notes indicating that Victim 1 requested a $42,000 transfer to her bank account. Winslow falsely noted, "She is completing the project at her rental home."

Verified Complaint for Forfeiture *in Rem* - 7
*United States v. Real Property at 531 6TH Avenue, Fox Island, WA.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

In truth, Victim 1 did not own a rental home. A few days after the $42,000 was deposited into Victim 1's bank account, the $42,000 was wired to Winslow's bank account.

30.     On or about November 7, 2022, Victim 1 made a sworn affidavit knowing that it may be used in a legal proceeding. As set forth therein, Victim 1 was shocked to learn that Winslow had been withdrawing and transferring her funds without her knowledge or consent and had used her funds for his own purposes. Victim 1 never authorized the checks written to Winslow. Victim 1 had never heard of Gold Retailer #1 and had never received gold or anything else from Gold Retailer #1. Winslow would put Victim 1 on a speaker phone and instructed Victim 1 what to say to her bank in order to effectuate the wire transfers. Victim 1 never intended to give her money away to Winslow.

31.     Because Winslow used proceeds traceable to his wire fraud scheme to purchase, pay the mortgage, and improve the Defendant Property, in an amount totaling $222,784.02, the Defendant Property is property which constitutes or is derived from proceeds traceable to a violation of specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7) and 1961(1)(B), that is, Wire Fraud, in violation of 18 U.S.C. § 1343. Accordingly, the Defendant Property is subject to civil forfeiture, up to the amount of $222,784.02, pursuant to 18 U.S.C. § 981(a)(1)(C).

32.     Because Winslow laundered wire fraud proceeds through layering transactions and buying and selling gold and then used laundered proceeds to purchase, pay the mortgage, and improve the Defendant Property, the Defendant Property is property involved in a transaction in violation of 18 U.S.C. § 1956(a)(1)(B)(i), or is traceable to such property. The Defendant Property, therefore, is subject to civil forfeiture, in its entirety, pursuant to 18 U.S.C. § 981(a)(1)(A).

**B.     Analysis of Financial Accounts**

33.     During the relevant time period, Victim 1 had accounts at the Financial Services Firm (accounts ending 3691, 5908, 9182, and 9817), USAA (account ending 6224), Kitsap Bank (account ending 8211), and Vanguard (account ending 4270).

Verified Complaint for Forfeiture *in Rem* - 8
*United States v. Real Property at 531 6TH Avenue, Fox Island, WA.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Accounts 5908, 9817, and 4270 are Victim 1's individual brokerage accounts. Accounts 3691 and 9182 are her individual retirement accounts. USAA 6224 and Kitsap Bank 8211 accounts are her individual checking accounts, holding cash only and no investments. Victim 1 was the sole account holder on these accounts.

34.     During the relevant time period, Winslow had accounts at Chase (accounts ending 3531 and 6030) and Union Bank (accounts ending 3221 and 6794). Accounts 6030 and 3221 are Winslow's individual checking accounts. Account 3531 is his savings account. Account 6794 is a business checking account in the name of Wood Monkey LLC, which was owned and controlled solely by Winslow. Winslow established Wood Monkey in 2011 for the purpose of selling woodworking items he created. Winslow was the only authorized signer on his Chase and Union Bank accounts.

35.     For purposes of LIBR analysis, checks from Gold Retailer #2 that Winslow deposited into his accounts represent proceeds of Winslow's wire-fraud scheme. Deposits of Winslow's salary from the Financial Services Firm into his Chase 6030 and Union 3221 accounts were treated as "clean" money. For purposes of this LIBR analysis, deposits from unknown sources were treated as "clean" sources of funds.

36.     A chronology illustrating how Winslow moved Victim 1's funds from the Financial Services Firm and Vanguard, through her accounts at USAA and/or Kitsap Bank, to Winslow's accounts at Chase and Union Bank, is attached hereto as Exhibit A. Exhibit A also reflects checks from Gold Retailer #2 that Winslow deposited into his accounts.

37.     In Exhibit A, the column entitled "Firm Note" lists some of the notes that Winslow made in Victim 1's client file at the Financial Services Firm, and "Note Date" refers to the date that Winslow entered the note. Although the notes entered by Winslow indicate that Victim 1's funds would be used to benefit Victim 1, Winslow used Victim 1's funds to benefit himself.

Verified Complaint for Forfeiture *in Rem* - 9
*United States v. Real Property at 531 6TH Avenue, Fox Island, WA.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

38.     In Exhibit A, the columns entitled "Investment Trade" and "Trade Date" refer to the investments, which included stocks, mutual funds, and other securities in the Victim 1's Firm and Vanguard accounts that Winslow liquidated, and the date he did so.

39.     In Exhibit A, the columns entitled "Date 1," "Transfers between Victim's Accounts," and "Amount 1," refer to Winslow's transfers of Victim 1's funds from her Firm or Vanguard accounts to Victim 1's accounts outside the Firm, *i.e.*, her USAA and Kitsap Bank accounts.

40.     In Exhibit A, the columns entitled "Date 2," "Transfers from Victim to Winslow," and "Amount 2" identify Winslow's transfers (wires or checks) from Victim 1's USAA and Kitsap Bank accounts to Winslow's accounts at Chase and Union Bank. The column entitled "Winslow's Account Balance Before Transfer" refers to the pre-transfer balance in Winslow's specific account to which Winslow transferred Victim 1's funds. The column entitled "Winslow's Fraud Balance Prior to Victim's Funds" lists the amount of that pre-transfer balance that, based on LIBR methodology, was identified as fraud proceeds; the column entitled "Winslow's Clean Balance Prior to Victim's Funds" lists the amount of that pre-transfer balance that, based on LIBR methodology, was identified as "clean" funds.

41.     As further discussed below, Exhibit A also reflects some of the significant events that occurred, *e.g.*, when Victim 1 inherited property from her sister.

42.     Winslow's movement of funds among Victim 1's non-Firm accounts, as shown in Exhibit A, was done to conceal and disguise the nature, location, source, ownership, and control of those proceeds.

43.     Exhibit B, attached hereto, summarizes the calculation of the fraud loss that Winslow caused Victim 1, based upon the transactions discussed in greater detail in Exhibit A. As reflected in Exhibit B, the total amount of funds that Winslow stole from Victim 1 is $920,482.90.

Verified Complaint for Forfeiture *in Rem* - 10
*United States v. Real Property at 531 6TH Avenue, Fox Island, WA.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**C.      Winslow's Wire Fraud Scheme and Money Laundering**

**1.      Theft from Victim 1's Bank Accounts**

44.      In July 2017, Winslow began moving Victim 1's funds from her USAA 6224 into his own accounts. Winslow falsely represented to Victim 1 that if she were to transfer money to him, he would repay her at a higher interest rate than what she was getting from her accounts. To effectuate these wire transfers, Winslow visited Victim 1 at her home, instructed Victim 1 to call the banks and to put the call on speakerphone, and instructed her on what she should tell the banks.

45.      The first such identified transfer was on July 7, 2017, when Winslow caused Victim 1 to wire transfer $8,000 from Victim 1's USAA account into his Chase 6030 account. Prior to this transfer, Winslow had a negative balance in his Chase 6030 account. *See* Exhibit A, line 1.

46.      On or about October 17, 2019, Winslow caused Victim 1 to wire transfer $7,500 from Victim 1's USAA account, but this time, to his Union 6794. Prior to this transfer, Winslow had a negative balance in his Union 6794 account. *See* Exhibit A, line 2.

47.      On or about November 24, 2017, December 19, 2017, and June 4, 2018, Winslow caused Victim 1 to write checks from Victim 1's Kitsap account to his Union 6794 account, held in the name of Wood Monkey. These checks were in the amounts of $7,500, $7,100, and $6,500, respectively. *See* Exhibit A, lines 3-5. Victim 1 did not authorize these checks. Victim 1 was not familiar with the name Wood Monkey.

**2.      Liquidation and Theft of Victim 1's Assets at the Financial Services Firm**

48.      On or about August 13, 2018, Victim 1's sister passed away. *See* Exhibit A, line 6.

49.      Also in August of 2018, Winslow began to liquidate Victim 1's securities in her brokerage accounts at the Financial Services Firm and to transfer funds from her Firm

Verified Complaint for Forfeiture *in Rem* - 11
*United States v. Real Property at 531 6TH Avenue, Fox Island, WA.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

accounts to her accounts at USAA and Kitsap Bank. Winslow often inputted false entries in the client services file at the Firm to create the false impression that he had taken these actions at Victim 1's request.

50.     For example, on or about August 31, 2018, Winslow entered a note in Victim 1's client file at the Firm indicating that Victim 1 wanted a $30,000 transfer to her USAA account to help with expenses associated with her sister's estate and expected medical bills. On or about August 31, 2018, Winslow sold mutual funds worth approximately $32,000 that were in Victim 1's account at the Firm. That same day, Winslow transferred $30,000 from Victim's 1 account at the Firm to Victim 1's USAA account. Then, on or about September 6, 2018, Winslow caused Victim 1 to wire transfer $35,000 from Victim 1's USAA account to his Chase 6030. Prior to this $35,000 transfer into his Chase 6030 account, the balance in the Chase 6030 was $0.74. *See* Exhibit A, line 7.

51.     On or about October 4, 2018, Winslow entered a note in Victim 1's client file at the Firm that Victim 1 was still concerned about having enough cash to cover expenses from her sister's estate until it is finalized, so Victim 1 decided to sell another $30,00 of her mutual funds. On or about October 9, 2018, Winslow sold mutual funds worth approximately $30,000 that were in Victim 1's account at the Firm. On or about October 16, 2018, Winslow transferred $34,000 from Victim 1's account at the Firm to her USAA account. On or about October 31, 2018, Winslow caused Victim 1 to wire transfer $38,000 from Victim 1's USAA account to Winslow's Chase 6030 account. *See* Exhibit A, line 8.

52.     On or about March 11, 2019, Winslow transferred $9,900 from Victim 1's account at the Firm to her USAA account. *See* Exhibit A, line 9.

53.     On or about March 25, 2019, Winslow entered a note in Victim 1's client file at the Firm stating that funds were needed for her sister's estate services, so there would be a $5,000 transfer to USAA. That same day, Winslow transferred $5,000 from

Verified Complaint for Forfeiture *in Rem* - 12
*United States v. Real Property at 531 6TH Avenue, Fox Island, WA.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Victim 1's account at the Firm to her USAA account. Then, on March 26, 2019, Winslow caused Victim 1 to wire transfer $12,000 from Victim 1's USAA account to Winslow's Chase 6030 account. *See* Exhibit A, line 10.

54.     On or about June 18, 2018, Winslow caused Victim 1 to wire transfer $16,000 from Victim 1's USAA account to his Chase 6030 account. *See* Exhibit A, line 11.

55.     On or about July 1, 2019, Winslow entered a note in Victim 1's client file at the Firm that Victim 1 needed to cover remodel expenses and changes to her front yard. That same day, he made two transfers from Victim 1's account at the Firm: a $10,000 transfer to her USAA account and a $12,000 transfer to her Kitsap Bank account. *See* Exhibit A, lines 12 and 13. On or about July 22, 2019, Winslow transferred $21,000 from Victim 1's Kitsap Bank account to her USAA account. *See* Exhibit A, line 14.

56.     On or about July 30, 2019, Winslow entered a note in Victim 1's client file at the Firm indicating that Victim 1 requested $16,000 from her individual brokerage account to be "ACH'd" to her USAA account and that she agreed to sell all shares of CLX (ticker symbol for Clorox Co.) and WFC (ticker symbol for Wells Fargo & Co.) to cover her request. The following day, Winslow sold the shares, worth approximately $15,000. On or about August 1, 2019, Winslow made two transfers from Victim 1's accounts at the Firm to her USAA account, with one transfer in the amount of $18,000 and the other $19,800. *See* Exhibit A, lines 15 and 16. On or about August 13, 2019, Winslow caused Victim 1 to wire transfer $44,000 from Victim 1's USAA to his Chase 6030. *See* Exhibit A, line 16.

57.     On or about September 4, 2019, Winslow entered a note in Victim 1's client file at the Firm indicating that Victim 1 wanted to raise cash in her account to purchase a rental property and that trades were entered to cover an expected withdrawal of $68,000. Two days later, Winslow sold stocks and mutual funds worth approximately $69,000 and transferred $68,000 from her Firm accounts to her USAA account. On or about

Verified Complaint for Forfeiture *in Rem* - 13
*United States v. Real Property at 531 6TH Avenue, Fox Island, WA.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

September 18, 2019, Winslow caused Victim 1 to wire transfer $89,000 from Victim 1's USAA account to his Chase 6030 account. *See* Exhibit A, line 17. Victim 1 did not own a rental property.

58.     On or about September 27, 2019, Winslow transferred $23,850 from Victim 1's account at the Firm to her USAA account. *See* Exhibit A, line 18. On or about October 30, 2019, Winslow caused Victim 1 to wire transfer $27,200 from Victim 1's USAA account to his Chase 3531 account. *See* Exhibit A, line 18.

59.     On or about November 5, 2019, Winslow sold stocks and mutual funds worth approximately $43,000. On or about November 8, 2019, Winslow entered a note in Victim 1's client file at the Firm indicating that she was completing the project at her rental home, and also transferred $42,000 from Victim 1's accounts at the Firm to her USAA account. On or about November 20, 2019, Winslow caused Victim 1 to wire transfer $42,000 from Victim 1's USAA account to his Chase 3531 account. *See* Exhibit A, line 19. As noted above, Victim 1 did not own a rental home.

60.     On or about December 13, 2019, Winslow entered a note in Victim 1's client file at the Firm indicating that the estate from her sister's account was not yet finalized so she would like additional cash sent to her bank account. On or about December 17, 2019, Winslow sold stocks and mutual funds in Victim 1's account at the Firm that were worth about $35,000. The following day, Winslow transferred $36,000 from Victim 1's account at the firm to her USAA account. On or about December 27, 2019, Winslow caused Victim 1 to wire transfer $38,600 from Victim 1's USAA account to his Chase 3531 account. *See* Exhibit A, line 20.

**3.     Winslow Liquidates and Steals Victim 1's Inheritance from Her Sister**

61.     In February of 2020, Victim 1 received more than $800,000 as an inheritance from her deceased sister's estate: investments worth approximately $300,000, which were deposited into her Vanguard account on or about February 10, and funds in the amount of $522,098.16, which were deposited into her account at the Financial

Verified Complaint for Forfeiture *in Rem* - 14
*United States v. Real Property at 531 6TH Avenue, Fox Island, WA.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Services Firm. *See* Exhibit A, lines 21-22. Winslow sold the mutual funds in her Vanguard account in March 2020; the proceeds were transferred to Victim's USAA 6224, and ultimately Winslow's Chase 3531 in April 2020. Winslow transferred Victim's Firm account 9817 to the Vanguard account in October 2020 and started his purchase of gold coins shortly after. Winslow moved Victim 1's funds from her accounts at the Firm to her Vanguard accounts to avoid supervision review. By December 2020, Winslow had liquidated Victim's annuity claiming she no longer needed the annuity or its monthly withdrawals. By January 2021, Winslow had transferred Victim's Firm account 5908 to Vanguard 4270.

62.     On or about February 28, 2020, Winslow entered a note in Victim 1's client file at the Financial Services Firm that she wants to add cash to her bank account and requested a $36,000 transfer to USAA. That same day, Winslow transferred $42,000 from Victim 1's account at the Firm to her USAA account. *See* Exhibit A, line 23.

63.     On or about March 4, 2020, Winslow sold mutual funds, which Victim 1 had inherited from her sister and had been deposited into Victim 1's Vanguard account. The sale generated approximately $204,859 in cash. *See* Exhibit A, line 24.

64.     On or about March 11, 2020, Winslow entered a note in Victim 1's client file at the Financial Services Firm that she wants more cash in her USAA account, and "ACH $60K entered." That same day, Winslow transferred $60,000 from Victim 1's account at the Firm to Victim 1's USAA account. *See* Exhibit A, line 25.

65.     Records obtained from the Financial Services Firm show that the transfers out of Victim 1's accounts at the Firm triggered internal alerts. Two days after the $60,000 ACH out of Victim 1's account, Winslow was questioned by the Firm's supervision staff. *See* Exhibit A, line 26. During a phone conversation on or about March 13, 2020, Winslow falsely claimed that Victim 1 had requested the transfers to her USAA account and her Kitsap Bank account. With respect to the $60,000 wire transfer in particular,

Verified Complaint for Forfeiture *in Rem* - 15
*United States v. Real Property at 531 6TH Avenue, Fox Island, WA.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Winslow claimed that Victim 1 wanted to replenish her bank account and have the cash on

2   hand.

3       66.     As noted above, Winslow's liquidation of mutual funds in Victim 1's

4   Vanguard account had generated more than $200,000. On or about April 2, 2020,

5   Winslow transferred $200,000 from Victim 1's Vanguard account to Victim 1's USAA

6   account. *See* Exhibit A, lines 24 and 27. The following day, Winslow caused Victim 1 to

7   wire transfer 86,000 from Victim 1's USAA account to Winslow's Chase 3531 account.

8   On or about June 3, 2020, Winslow caused Victim 1 to wire transfer another $86,000 from

9   Victim 1's USAA account to his Chase 3531 account. *See* Exhibit A, lines 24, 27-28.

10      **4.     Winslow Moves the Remaining Assets in Victim 1's Firm Accounts to
            Vanguard and Then Starts Buying One-Ounce American Gold Eagle
11          Coins Using Victim 1's Vanguard Funds.**

12      67.     On or about September 28, 2020, Winslow noted in Victim 1's client file at

13  the Financial Services Firm that Victim 1 wanted to consolidate her investments with

14  Vanguard because she "likes the online features available and the ease of use online," and

15  that "[h]er friend and neighbor will assist her as requested by" Victim 1. *See* Exhibit A,

16  line 32. However, Victim 1 was not well-versed with technology or electronics.

17      68.     On or about October 2, 2020, Winslow moved all remaining assets

18  (consisting of cash in the amount of $6,874.94 plus investments) in Victim 1's account at

19  the Financial Services Firm (account ending 9817) to her Vanguard 4270 account. *See*

20  Exhibit A, line 30.

21      69.     On or about October 6, 2020, Winslow caused the first of a sequence of nine

22  checks in total, to be written on Victim 1's Vanguard 4270 account, payable to an online

23  gold retailer (Gold Retailer #1). *See* Exhibit A, lines 31, 33, 34, 38, 39, 41, 43, 45 & 46.

24  These checks were sequentially numbered (*i.e.,* check numbers 1001 through 1009). *See*

25  *id.* Winslow used these checks to purchase 190 one-ounce American Gold Eagle coins,

26  costing a total of $370,083, from Gold Retailer #1.

27

Verified Complaint for Forfeiture *in Rem* - 16
*United States v. Real Property at 531 6TH Avenue, Fox Island, WA.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

70.     Although Victim 1 had signed the checks, she had done so unaware that the checks would be used to purchase gold coins for Winslow.

71.     Exhibit C, attached hereto, summarizes records obtained from Gold Retailer #1 pertaining to these nine purchases of gold coins. Exhibit B reflects the order date, ship date, shipping address, item description, quantity, cost and manner of payment from Gold Retailer #1. The first order Winslow made was on or about September 29, 2020, and the last was on or about April 27, 2021. *See* Exhibit C.

72.     Winslow arranged for the first shipment of gold coins to be delivered to Victim 1's residence. Using a copy of Victim 1's mailbox key that he obtained from Victim 1 under the guise that he would manage her affairs, Winslow intercepted this shipment. He arranged for the following eight shipments of gold coins from Gold Retailer #1 to be delivered to a Post Office Box that he solely owned and controlled. Winslow's P.O. Box was in Fox Island, Washington.

73.     On or about December 22, 2020, Winslow entered a note in Victim 1's client file at the Financial Services Firm indicating Victim 1 no longer needed her annuity or its monthly withdrawal and that Victim 1 planned to use the funds from the annuity for other investments after transferring to Vanguard. *See* Exhibit A, line 35. On or about December 31, 2020, Winslow redeemed an annuity in Victim 1's account at the Financial Service Firm, in the amount of $142,338. *See* Exhibit A, line 36. On or about January 21, 2021, Winslow transferred the remaining cash in Victim 1's 5908 account at the Financial Services Firm -- $213,026.50 – plus investments, to Victim 1's Vanguard 4270 account. *See* Exhibit A, line 37.

74.     On or about May 20, 2021, the email address associated with Victim 1's accounts at Vanguard was changed to an email address that Winslow used to communicate with Gold Retailer #1.[1]

---

[1] The email associated with Victim 1's Vanguard account was changed again on or about November 4, 2021. Investigators have not yet confirmed the user of this email.

Verified Complaint for Forfeiture *in Rem* - 17
*United States v. Real Property at 531 6TH Avenue, Fox Island, WA.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

75.     Beginning in December 2020, and continuing until December 2021, Winslow deposited 15 checks from a second gold retailer ("Gold Retailer #2") into his bank accounts. Gold Retailer #2 is a brick-and-mortar gold retailer in Gig Harbor, Washington.

76.      During an interview, the owners of Gold Retailer #2 stated that they remembered Winslow. They stated that Winslow sold only one-ounce American Gold Eagle coins. When Winslow came into Gold Retailer #2, Winslow, who was always well dressed, told the owners that he was selling the gold coins for a client. Winslow sold the one-ounce American Gold Eagle coins for a one-year period, from December 2020 to December 2021. Winslow had not returned to Gold Retailer #2 since the last time he sold the gold coins to Gold Retailer #2.

77.     Exhibit D, attached hereto, summarizes Gold Retailer #2's records regarding Gold Retailer #2's purchases of one-ounce American Gold Eagle coins from Winslow. From December 11, 2020, through December 20, 2021, Gold Retailer #2 made 15 purchases from Winslow. The 15 checks from Gold Retailer #2 match the checks that Winslow deposited into his bank accounts. On one occasion (December 18, 2020), Winslow sold six gold coins to Gold Retailer #2, and requested a payment in both cash and in check. The amount that Gold Retailer #2 paid Winslow for gold coins totaled $332,601.

78.     Most of the records showed the quantity of coins that the Gold Retailer #2 purchased; for the records that did not specify a quantity of coins in a particular transaction, Gold Retailer #2's owners were able to estimate the number of coins based upon the amount paid to Winslow and the price of gold at the time. The owner of Gold Retailer #2 estimated that Gold Retailer # 2 had purchased a total of approximately 180 one-ounce American Gold Eagle coins from Winslow.

79.     When interviewed by the Firm on December 13, 2021, Winslow admitted to using approximately $300,000 of Victim 1's funds towards the down payment on his

Verified Complaint for Forfeiture *in Rem* - 18
*United States v. Real Property at 531 6TH Avenue, Fox Island, WA.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

home, renovations, and remodel, and that he received gold coins purchased, on behalf of Victim 1, in a P.O. Box controlled by him. Winslow was terminated from his employment at the Firm that same day.

80.     Victim 1 declared on her sworn affidavit on November 7, 2022, that Winslow purchased the gold coins without her knowledge. Additionally, Winslow had refused to return any of the funds or gold coins that were purchased with Victim 1's money and without her knowledge.

81.     Winslow's wire-fraud scheme involved the use of interstate wires. For example, Winslow conducted, or caused to be conducted, from within Washington, wire transfers of funds from Victim 1's accounts to or through servers located outside Washington.

82.     Winslow's layering of transactions described above, including his unauthorized purchase and resale of one-ounce American Gold Eagle coins—was designed, at least in part, to conceal and/or disguise the nature, location, source, ownership, and/or control of the proceeds of his wire-fraud scheme.

83.     As discussed in further detail below, investigators have traced laundered funds that Winslow obtained from Gold Retailer #2 to make mortgage payments on, and improvements to, the Defendant Property.

**E.    Winslow Purchased and Improved the Defendant Property Using Wire Fraud Proceeds.**

84.     As further discussed below, Winslow used Victim 1's money as earnest money and the down payment for the Defendant Property; to pay the mortgage on the Defendant Property; and to make improvements to the Defendant Property. Exhibit E, attached hereto, summarizes Winslow's expenditures of Victim 1's funds that investigators have traced into Defendant Property; the amount of proceeds traced to the Defendant Property is $222,784.02. In Exhibit F, the payments reflected in Exhibit E have been summarized by category (e.g., mortgage payments).

Verified Complaint for Forfeiture *in Rem* - 19
*United States v. Real Property at 531 6TH Avenue, Fox Island, WA.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**1.      Winslow Used Fraud Proceeds to Purchase the Defendant Property.**

85.      As noted above, on or about July 1, 2019, Winslow moved funds from Victim 1's Firm account 9817 to her USAA 6224, and from her Firm account 5908 to her Kitsap 8211. Three weeks later, he consolidated these proceeds, along with other proceeds, in Victim 1's USAA 6224. On or about August 13, 2019, Winslow moved $44,000 in fraud proceeds from Victim 1's USAA 6224 into his personal Chase 6030. *See* Exhibit A, lines 13-16.

86.      On or about September 6, 2019, Winslow sold some of Victim 1's stocks and mutual funds worth approximately $69,000. That same day, Winslow transferred $68,000 in the resulting proceeds from Victim 1's Firm accounts to her USAA 6224. On or about September 18, 2019, Winslow moved $89,000 in fraud proceeds from Victim 1's USAA 6224 to his Chase 6030. After this $89,000 transfer, the balance in Winslow's Chase 6030 consisted of $109,600 in fraud proceeds. *See* Exhibit A, line 17.

87.      The above-described movement of funds among Victim 1's non-Firm accounts is an example of Winslow's pattern of attempting to conceal and disguise the nature, location, source, ownership, and control of these wire fraud proceeds.

88.      On or about September 24, 2019, Winslow transferred $95,000 – all proceeds -- from his Chase 6030 (checking account) to his Chase 3531 (savings account). Prior to this $95,000 transfer, the balance in Winslow's Chase 3531 was zero.

89.      On or about September 25, 2019, Winslow wire transferred $5,000 – all proceeds -- from his Chase 6030 to Escrow Company #1. *See* Exhibit E, line 1. Escrow records show that this $5,000 was Winslow's earnest money deposit to purchase the Defendant Property.

90.      On October 25, 2019, Winslow wired $94,542.19 – all proceeds -- from his Chase 3531 to Escrow Company #1. *See* Exhibit E, line 2. Records obtained from Escrow Company #1 show that this $95,542.19 was Winslow's down payment to purchase the Defendant Property.

Verified Complaint for Forfeiture *in Rem* - 20
*United States v. Real Property at 531 6TH Avenue, Fox Island, WA.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

91.     Documents obtained from Escrow Company #1 show that Winslow obtained a mortgage in the amount of $290,400 to purchase the Defendant Property. In his loan application, Winslow declared that none of his down payment was borrowed.

92.     A Special Warranty Deed recorded in Pierce County, Washington, on October 28, 2019, instrument no. 201910280872, states in part that U.S. Bank National Association bargains, sells, and conveys to John S. Winslow, an unmarried man, 531 6th Avenue, Fox Island, WA 98333 (the Defendant Property).

93.     A Deed of Trust recorded in Pierce County, Washington, on October 28, 2019, instrument no. 201910280873, states in part that John S Winslow, an unmarried man (the Borrower) owes JPMorgan Chase Bank, N.A. (the Lender) $290,400, plus interest, pursuant to terms of a promissory note, secured by the Defendant Property.

**2.      Winslow Used Fraud Proceeds to Pay the Mortgage on the Defendant Property**

94.     An analysis of Winslow's Chase 6030 showed that from November 27, 2019, through September 27, 2021, Winslow made 22 mortgage payments on the Defendant Property totaling $57,715.98. *See* Exhibit E, lines 6-11, 15, 19, 23, 27-35, 38-41; *see also* Exhibit F, line 1. Per LIBR accounting methodology, at least $56,201.23 of this $57,715.98 can be traced to proceeds of fraud from Victim 1. *See* Exhibit F, line 1.

95.     Furthermore, analysis of Winslow's bank reveals that $35,282.21 of $56,201.23 in fraud proceeds is traceable to the checks payable to Winslow from Gold Retailer #2.

96.     By laundering funds through layering transactions and gold coin purchases and sales, and by commingling "clean" money with "dirty" money, Winslow was attempting to create the false appearance that he was paying the mortgage for the Defendant Property entirely with "clean" money. Because Winslow paid the mortgage with laundered proceeds, the Defendant Property is involved in Winslow's money laundering.

Verified Complaint for Forfeiture *in Rem* - 21
*United States v. Real Property at 531 6TH Avenue, Fox Island, WA.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**3.     Winslow Used Fraud Proceeds to Improve the Defendant Property.**

     **a.     New HVAC Unit, New Refrigerator, and New Hot Water Heaters from Retailer #3.**

97.     On November 1, 2019, Winslow completed a special order through a retailer ("Retailer #3") in the amount $15,111.40. This order consisted of duct cleaning, removing existing furnace, delivering and installing a new gas furnace and heat pump, and hauling away replaced equipment. Winslow paid for these items using fraud proceeds in his Chase 6030. *See* Exhibit E, line 3.

98.     On November 19, 2019, Winslow purchased a French-door refrigerator for $2,363 from Retailer #3. As of November 18, 2019, Winslow's Chase 6030 balance was $9,395.32, which consisted of $594.27 of clean money and $8,801.05 of fraud proceeds. Taking other transactions into account, and using LIBR methodology, Winslow's payment for this new refrigerator using funds form his Chase 6030 consisted of $924.25 of clean money and $1,438.75 of fraud proceeds. *See* Exhibit E, line 4.

99.     On November 20, 2019, Winslow purchased hot water heaters from Retailer #3 for $5,028.14. Winslow paid for the new hot water heaters using fraud proceeds, only, that were in his chase 6030. *See* Exhibit E, line 5.

100.     As records obtained from Retailer #3 show, the new gas furnace and hot water heaters were installed at the Defendant Property.

101.     Records from Retailer #3 show that the refrigerator was shipped to Winslow on November 18, 2019.

     **b.     Landscaping and Outdoor Improvements.**

102.     On or about May 2020, Winslow contracted Contractor #1 and his associate to landscape and improve the backyard at the Defendant Property.

103.     Investigators have interviewed Contractor #1. The work included removing trees, clearing out blackberry bushes, planting new trees, putting in fences, building a retainer wall, and building a concrete patio.

Verified Complaint for Forfeiture *in Rem* - 22
*United States v. Real Property at 531 6TH Avenue, Fox Island, WA.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

104.    Winslow paid a total of $44,800 to Contractor #1 and his associate from Winslow's Chase 6030. Of this amount, $1,819.71 was clean money and $42,980.29 was fraud proceeds. *See* Exhibit E, lines 12-14, 16-18, 20-22, and 24-26; Exhibit F, line 5.

### c.    Hot Tub.

105.    In April of 2021, Winslow deposited two checks from Gold Retailer #2 into his Chase 6030, that is, on April 20, 2021, in the amount of $30,000, and on April 23, 2021, in the amount of $35,540. *See* Exhibit A, lines 45-46. Per LIBR methodology, the balance in Winslow's Chase 6030 as of May 23, 2021, was $10,251.77, of which $9,492.78 consisted of fraud proceeds that he had laundered using gold coins, and $758.99 consisted of "clean" money.

106.    On May 22, 2021, Winslow ordered a Highlife Grandee hot tub for $21,814.14 from a hot tub retailer (the "Hot Tub Company") to be installed at the Defendant Property.

107.    On or about May 24, 2021, Winslow made two deposits, totaling $4,000.00 towards the hot tub. He used his Visa card linked to Chase 6030 to make a payment to Hot Tub Company, in the amount of $3,000. Per LIBR, the funds used to make this payment consisted of $758.99 in "clean" money and $2,241.01 in fraud proceeds, which he had laundered using gold coins. *See* Exhibit E, line 36.

108.    Also on or about May 24, 2021, Winslow used his Mastercard linked to Union 3221 to make a payment to Hot Tub Company in the amount of $1,000. Per LIBR, the funds used to make this payment consisted of $758.99 in "clean" money and $241.01 in fraud proceeds, which he had laundered using gold coins. *See* Exhibit E, line 37,

109.    On October 30, 2021, Winslow paid the remainder of the invoice for the hot tub in full, although this particular payment is not traceable to proceeds.

110.    On December 22, 2021, the hot tub was installed at the Defendant Property.

111.    In sum, based upon the financial analysis of Winslow's bank accounts using LIBR methodology, of the $4,000 paid to the Hot Tub Company, $2,482.02is traceable to

Verified Complaint for Forfeiture *in Rem* - 23
*United States v. Real Property at 531 6TH Avenue, Fox Island, WA.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  fraud proceeds that Winslow had laundered using gold coins, and $1,517.98 is "clean"

2  money.

3  **D.    Refinancing**

4      112.    According to JPMorgan Chase records, on October 27, 2021, Winslow

5  signed a loan application for a $400,000 loan to refinance his prior mortgage on the

6  Defendant Property. According to this loan application, the unpaid balance of his prior

7  mortgage was $259,508.42 and would be paid off in connection with the refinance. On or

8  about November 9, 2021, Winslow received $136,525.99 in cash out as part of the

9  refinance.

10      113.    A Deed of Trust recorded in Pierce County, Washington, on November 1,

11  2021, instrument no. 202111010147, states in part that John S. Winslow, an unmarried

12  man (the Borrower) owes JPMorgan Chase Bank, N.A. (the Lender) $400,000, plus

13  interest, pursuant to terms of a promissory note, secured by the Defendant Property.

14      114.    As of June 16, 2023, the outstanding balance of this mortgage is

15  $388,472.19.

16                 **VI.    CLAIM FOR RELIEF**

17      115.    As required by Supplemental Rule G(2)(f), the facts set forth in this Verified

18  Complaint for Forfeiture *In Rem* support a reasonable belief that the United States will be

19  able to meet its burden of proof at trial. More specifically, there is probable cause to

20  believe that the Defendant Property is forfeitable pursuant to 18 U.S.C. § 981(a)(1)(C), up

21  to the amount of the property which constitutes or is derived from proceeds traceable to a

22  violation of Wire Fraud, in violation of 18 U.S.C. § 1343. The total amount of traceable

23  proceeds is at least $222,784.02.

24      116.    Additionally, there is probable cause to believe that the Defendant Property

25  is forfeitable pursuant to 18 U.S.C. § 981(a)(1)(A). More specifically, there is probable

26  cause to believe that Winslow used laundered funds to purchase, pay the mortgage on, and

27  improve the Defendant Property, and, therefore, the Defendant Property is property

Verified Complaint for Forfeiture *in Rem* - 24
*United States v. Real Property at 531 6TH Avenue, Fox Island, WA.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

involved in Winslow's money laundering, or traceable to such property, and is forfeitable, in its entirety, on that basis.

WHEREFORE, the United States respectfully requests:

1.      Due notice be given to all interested parties to appear and show cause why the Defendant Property should not be forfeited;

2.      Judgment be entered declaring the Defendant Property and any interest to be condemned and forfeited to the United States for disposition according to law; and,

3.      The United States be granted such other and further relief as this Court may deem just and proper.

DATED this 20th day of September, 2024.

Respectfully submitted,

TESSA M. GORMAN
United States Attorney

_s/ Karyn S. Johnson_
KARYN S. JOHNSON
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101
Phone: (206) 553-2462
Fax: (206) 553-6934
Karyn.S.Johnson@usdoj.gov

Verified Complaint for Forfeiture *in Rem* - 25
*United States v. Real Property at 531 6TH Avenue, Fox Island, WA.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## **<u>VERIFICATION</u>**

I, Linh Dang, a Special Agent with Internal Revenue Service – Criminal Investigations (IRS-CI), being first duly sworn, upon oath, depose and state the following:

I have been a Special Agent with the Internal Revenue Service, Criminal Investigation (IRS-CI) since May 2020. My official duties and responsibilities include the investigation of alleged criminal violations of the Internal Revenue Code (Title 26, United States Code), the Money Laundering Control Act of 1986 (Title 18, United States Code, Sections 1956 and 1957), the Bank Secrecy Act (Title 31, United States Code), and other related offenses.

Before my career as a Special Agent with IRS-CI, I was a financial investigator at a large financial institution. I hold Certified Fraud Examiner and Certified Anti-Money Laundering Specialist certifications. I have successfully completed approximately 26 weeks of basic training at the Federal Law Enforcement Training Center in Glynco, Georgia. My training included courses in law enforcement techniques, federal criminal statutes, conducting criminal investigations, and the execution of search warrants. I have received extensive training in accounting and financial investigative techniques relating to criminal violations of the Internal Revenue Code and related offenses. I have participated in the execution of several search warrants involving criminal tax and related offenses and participated in periodic continuing education.

I furnished the investigative facts contained in the foregoing Verified Complaint for Forfeiture *In Rem*. The investigative facts are based on personal knowledge I obtained from my involvement in the underlying investigation, my review of the relevant investigative material, other federal agencies and law enforcement officers involved in the investigation, other reliable official Government sources, and my own training and experience.

Verified Complaint for Forfeiture *in Rem* - 26
*United States v. Real Property at 531 6TH Avenue, Fox Island, WA.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    I hereby verify and declare, under penalty of perjury pursuant to 28 U.S.C. § 1746,

2  that I have read the foregoing Verified Complaint for Forfeiture *In Rem*, that I know its

3  contents, and that the facts it contains are true and correct to the best of my knowledge.

4

5    Executed this 20th day of September, 2024.

6

7                        *Linh Dang*

8                        _____
                        LINH DANG
9                        Special Agent
                        Internal Revenue Service – Criminal Investigation

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Verified Complaint for Forfeiture *in Rem* - 27
*United States v. Real Property at 531 6TH Avenue, Fox Island, WA.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# EXHIBIT A

**EXHIBIT A - SUMMARY OF FLOWS OF TRANSFERS FROM VICTIM'S ACCOUNTS TO WINSLOW'S ACCOUNTS**

| Line | Note Date | Firm Note | Trade Date | Investment Trades | Date 1 | Transfers between Victim's Accounts (Method) | Amount 1 | Date 2 | Transfers from Victim to WINSLOW (Method) | Amount 2 | WINSLOW's Account Balance Before Transfer | WINSLOW's Fraud Balance Prior to Victim's Funds | WINSLOW's Clean Balance Prior to Victim's Funds |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 7/7/2017 | | | | | | | 7/7/2017 | Victim USAA 6224-WINSLOW Chase 6030 (Wire) | 8,000.00 | (28.67) | (28.67) | - |
| 2 | 10/17/2017 | | | | | | | 10/17/2017 | Victim USAA 6224-WINSLOW Union 6794 (Wire) | 7,500.00 | (51.00) | (51.00) | - |
| 3 | 11/24/2017 | | | | | | | 11/24/2017 | Victim Kitsap 8211-WINSLOW Union 6794 (Check) | 7,500.00 | 102.62 | 168.62 | - |
| 4 | 12/19/2017 | | | | | | | 12/19/2017 | Victim Kitsap 8211-WINSLOW Union 6794 (Check) | 7,100.00 | 842.14 | 908.14 | - |
| 5 | 6/4/2018 | | | | | | | 6/4/2018 | Victim Kitsap 8211-WINSLOW Union 6794 (Check) | 6,500.00 | 0.74 | 19.74 | 32.00 |
| 6 | 8/21/2018 | Victim's sister passed away on 08/13 in California. Victim indicated that her sister did not have a will. | | | | | | | | | | | |
| 7 | 8/31/2018 | Victim requested $30,000 transfer to USAA to help with expenses of Victim's sister's estate and expected medical bills. | 8/31/2018 | WINSLOW sold mutual funds worth approximately $32,000 | 8/31/2018 | Victim Firm 9817-Victim USAA 6224 (ACH) | 30,000.00 | 9/6/2018 | Victim USAA 6224-WINSLOW Chase 6030 (Wire) | 35,000.00 | 11.14 | - | 11.14 |
| 8 | 10/4/2018 | Victim was still concerned about having enough cash to cover expenses from her sister's estate until it is finalized, and Victim decided to sell another $30,000 of her Invesco funds as funds are needed. | 10/9/2018 | WINSLOW sold mutual funds worth approximately $30,000 | 10/16/2018 | Victim Firm 9817-Victim USAA 6224 (ACH) | 34,000.00 | 10/31/2018 | Victim USAA 6224-WINSLOW Chase 6030 (Wire) | 38,000.00 | 1,962.41 | 1,962.41 | - |
| 9 | 3/11/2019 | | | | 3/11/2019 | Victim Firm 9182-Victim USAA 6224 (ACH) | 9,900.00 | | | | | | |
| 10 | 3/25/2019 | Funds were needed for Victim's sister's estate services. Transfer $5,000 to USAA. | | | 3/25/2019 | Victim Firm 9817-Victim USAA 6224 (ACH) | 5,000.00 | 03/26/2019 | Victim USAA 6224-WINSLOW Chase 6030 (Wire) | 12,000.00 | 1,159.03 | 823.59 | 335.44 |
| 11 | 06/18/2019 | | | | | | | 06/18/2019 | Victim USAA 6224-WINSLOW Chase 6030 (Wire) | 16,000.00 | 218.23 | 27.76 | 190.47 |
| 12 | 7/1/2019 | Victim needed to cover remodel expenses and changes to front yard. | | | 7/1/2019 | Victim Firm 9817-Victim USAA 6224 (ACH) | 10,000.00 | | | | | | |

| Line | Note Date | Firm Note | Trade Date | Investment Trades | Date 1 | Transfers between Victim's Accounts (Method) | Amount 1 | Date 2 | Transfers from Victim to WINSLOW (Method) | Amount 2 | WINSLOW's Account Balance Before Transfer | WINSLOW's Fraud Balance Prior to Victim's Funds | WINSLOW's Clean Balance Prior to Victim's Funds |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 13 | 7/1/2019 | Victim needed to cover remodel expenses and changes to front yard. | | | 7/1/2019 | Victim Firm 5908-Victim Kitsap 8211 (ACH) | 12,000.00 | | | | | | |
| 14 | 7/22/2019 | | | | 7/22/2019 | Victim Kitsap 8211-Victim USAA 6224 (ACH) | 21,000.00 | | | | | | |
| 15 | 7/30/2019 | Victim requested $16,000 from her individual brokerage account Ach'd to USAA. Discussed selling all shares of CLX and WFC to cover the request. She agreed. Trades were entered. | 8/1/2019 | WINSLOW sold CLX and WFC worth approximately $15,000 | 8/1/2019 | Victim Firm 9817-Victim USAA 6224 (ACH) | 18,000.00 | | | | | | |
| 16 | 8/1/2019 | | | | 8/1/2019 | Victim Firm 3691-Victim USAA 6224 (ACH) | 19,800.00 | 08/13/2019 | Victim USAA 6224-WINSLOW Chase 6030 (Wire) | 44,000.00 | 1,676.40 | 1,634.28 | 42.12 |
| 17 | 9/4/2019 | Victim wanted to raise cash in her account to purchase a rental property. Trades entered to cover an expected withdrawal of $68,000. | 9/6/2019 | WINSLOW sold stocks and mutual funds worth approximately $69,000 | 9/6/2019 | Victim Firm 9817-Victim USAA 6224 (ACH) | 68,000.00 | 09/18/2019 | Victim USAA 6224-WINSLOW Chase 6030 (Wire) | 89,000.00 | 20,599.71 | 20,599.71 | 0 |
| 18 | 9/27/2019 | | | | 9/27/2019 | Victim Firm 9182-Victim USAA 6224 (ACH) | 23,850.00 | 10/30/2019 | Victim USAA 6224-WINSLOW Chase 6030 (Wire) | 27,200.00 | 3,423.07 | 3,423.07 | 0 |
| 19 | 11/8/2019 | Victim was completing the project at her rental home. | 11/5/2019 | WINSLOW sold stocks and mutual funds worth approximately $43,000 | 11/8/2019 | Victim Firm 9817-Victim USAA 6224 (ACH) | 42,000.00 | 11/20/2019 | Victim USAA 6224-WINSLOW Chase 3531 (Wire) | 42,000.00 | 423.61 | 408.61 | 0.21 |
| 20 | 12/13/2019 | The estate from Victim's sister is not yet finalized so Victim would like additional cash sent to her bank account. | 12/17/2019 | WINSLOW sold stocks and mutual funds worth approximately $35,000 | 12/18/2019 | Victim Firm 9817-Victim USAA 6224 (ACH) | 36,000.00 | 12/27/2019 | Victim USAA 6224-WINSLOW Chase 3531 (Wire) | 38,600.00 | 20,000.00 | 20,000.00 | 0 |
| 21 | 2/10/2020 | | | | | Victim received inheritance from her sister's estate in Vanguard 4270 (Investments worth approximately $300,000) | | | | | | | |
| 22 | 2/11/2020 | | | | | Victim received inheritance from her sister's estate in Firm 5908 (Cash of $522,098.16) | | | | | | | |

| Line | Note Date | Firm Note | Trade Date | Investment Trades | Date 1 | Transfers between Victim's Accounts (Method) | Amount 1 | Date 2 | Transfers from Victim to WINSLOW (Method) | Amount 2 | WINSLOW's Account Balance Before Transfer | WINSLOW's Fraud Balance Prior to Victim's Funds | WINSLOW's Clean Balance Prior to Victim's Funds |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 23 | 2/28/2020 | Victim wants to add cash to her bank account. Requested $36K transfer to USAA. ACH entered | | | 2/28/2020 | Victim Firm 9817-Victim USAA 6224 (ACH) | 42,000.00 | | | | | | |
| 24 | 3/4/2020 | | 3/4/2020 | Winslow sold Mutual Funds inherited from sister in Vanguard 4270, generated approximately $204,859 in cash | | | | | | | | | |
| 25 | 3/11/2020 | Victim wants more cash in her USAA account. ACH $60K entered. | | | 3/11/2020 | Victim Firm 9817-Victim USAA 6224 (ACH) | 60,000.00 | | | | | | |
| 26 | 3/13/2020 | Firm's Supervision Alert- Elderly Protection- Supervision spoke with Winslow in regards to distribution. Victim requested distribution to replenish her bank account and have the cash on hand. Winslow stated he does not have any capacity concerns at all for the client. No further action at this time. | | | | | | | | | | | |
| 27 | 04/02/2020 | | | | 04/02/2020 | Victim Vanguard 4270-Victim USAA 6224 (ACH) | 200,000.00 | 04/03/2020 | Victim USAA 6224-WINSLOW Chase 3531 (Wire) | **86,000.00** | 2,000.62 | 2,000.62 | 0 |
| 28 | 06/03/2020 | | | | | | | 06/03/2020 | Victim USAA 6224-WINSLOW Chase 3531 (Wire) | **86,000.00** | 10,000.51 | 10,000.51 | 0 |
| 29 | 9/28/2020 | Victim wants to consolidate her investments with Vanguard. She said she likes the online features available and the ease of use online. Her friend and neighbor will assist her as requested by Victim. | | | | | | | | | | | |
| 30 | 10/2/2020 | | | | | Everything in Victim's Firm 9817 -- consisting of cash of $6,874.94 and investments -- transferred to Vanguard 4270. Available cash in Vanguard 4270 prior to transfer was $9,755.46 | | | | | | | |

| Line | Note Date | Firm Note | Trade Date | Investment Trades | Date 1 | Transfers between Victim's Accounts (Method) | Amount 1 | Date 2 | Transfers from Victim to WINSLOW (Method) | Amount 2 | WINSLOW's Account Balance Before Transfer | WINSLOW's Fraud Balance Prior to Victim's Funds | WINSLOW's Clean Balance Prior to Victim's Funds |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 31 | 10/6/2020 | | | | | | | | Check #1001 for $8000 to Gold Retailer #1 (Check date 09/29/2020). Amount eventually deducted was $6,092.97 [matched with cash amount from Firm 9817] | 6,092.97 | | | |
| 32 | 10/14/2020 | | 10/14/2020 | Winslow sold ETFs in Vanguard account, generated $137,207.02 in cash | | | | | | | | | |
| 33 | 10/20/2020 | | | | | | | | Check #1002 for $40,240.20 to Gold Retailer #1 (Check date 10/13/2020) | 40,240.20 | | | |
| 34 | 11/10/2020 | | | | | | | | Check #1003 for $40,211.40 to Gold Retailer #1 (Check date 11/04/2020) | 40,211.40 | | | |
| 35 | 12/22/2020 | Victim no longer needs the annuity or the monthly withdrawals. Victim plans to use the funds from the annuity for other investments after transferring to Vanguard. Victim said to go ahead with the full liquidation of the annuity and that she is aware of the [surrender] charge [$2,633] and okay with the cost to liquidate. | | | | | | | | | | | |
| 36 | 12/31/2020 | | | Winslow redeemed victim's annuity for $142,338 in Victim's Firm 5908 | | | | | | | | | |
| 37 | 1/21/2021 | | | | | Everything in Victim's Firm 5908-- consisting of cash of $213,026.60 and investment-- transferred to Vanguard 4270. The cash came from the Annuity Redeemed and Victim's sister's estate from February 2020. | | | | | | | |

| Line | Note Date | Firm Note | Trade Date | Investment Trades | Date 1 | Transfers between Victim's Accounts (Method) | Amount 1 | Date 2 | Transfers from Victim to WINSLOW (Method) | Amount 2 | WINSLOW's Account Balance Before Transfer | WINSLOW's Fraud Balance Prior to Victim's Funds | WINSLOW's Clean Balance Prior to Victim's Funds |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 38 | 02/02/2021 | | | | | | | | Check #1004 for $39,432.80 to Gold Retailer #1 (Check date 01/27/2021) | 39,432.80 | | | |
| 39 | 03/03/2021 | | | | | | | | Check #1005 for $48,546.25 to Gold Retailer #1 (Check date 02/18/2021) | 48,546.25 | | | |
| 40 | 03/08/2021 | | 03/08/2021 | Winslow sold stock in Vanguard 4270 , generated $116,308.15 in cash | | | | | | | | | |
| 41 | 03/10/2021 | | | | | | | | Check #1006 for $49,590.84 to Gold Retailer #1 (Check date 03/03/2021) | 49,590.84 | | | |
| 42 | 3/22/2021 | | 3/22/2021 | Winslow sold stock in Vanguard 4270 , generated $97,992.86 in cash | | | | | | | | | |
| 43 | 03/29/2021 | | | | | | | | Check #1007 for $48,553.44 to Gold Retailer #1 (Check date 03/27/2021) | 48,553.44 | | | |
| 44 | 04/06/2021 | | 04/06/2021 | Winslow sold stock in Vanguard 4270 , generated $58,961.52 in cash | | | | | | | | | |
| 45 | 04/08/2021 | | | | | | | | Check #1008 for $48,090.25 to Gold Retailer #1 (Check date 04/01/2021) | 48,090.25 | | | |
| 46 | 05/04/2021 | | | | | | | | Check #1009 for $49,324.75 to Gold Retailer #1 (Check date 04/27/2021) | 49,324.75 | | | |

# EXHIBIT B

**EXHIBIT B - SUMMARY OF FRAUD LOSS TO VICTIM**

| No. | Date | Description | Check # | 2017 | 2018 | 2019 | 2020 | 2021 | Total |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 7/7/2017 | Victim's USAA 6224 to WINSLOW Chase 6030 | | 8,000.00 | | | | | |
| 2 | 10/17/2017 | Victim's USAA 6224 to WINSLOW Union 6794 | | 7,500.00 | | | | | |
| 3 | 11/24/2017 | Victim's Kitsap 8211 to WINSLOW Union 6794 | 1052 | 7,500.00 | | | | | |
| 4 | 12/19/2017 | Victim's Kitsap 8211 to WINSLOW Union 6794 | 1054 | 7,100.00 | | | | | |
| 5 | 6/4/2018 | Victim's Kitsap 8211 to WINSLOW Union 6794 | 1063 | | 6,500.00 | | | | |
| 6 | 9/6/2018 | Victim's USAA 6224 to WINSLOW Chase 6030 | | | 35,000.00 | | | | |
| 7 | 10/31/2018 | Victim's USAA 6224 to WINSLOW Chase 6030 | | | 38,000.00 | | | | |
| 8 | 3/26/2019 | Victim's USAA 6224 to WINSLOW Chase 6030 | | | | 12,000.00 | | | |
| 9 | 6/18/2019 | Victim's USAA 6224 to WINSLOW Chase 6030 | | | | 16,000.00 | | | |
| 10 | 8/13/2019 | Victim's USAA 6224 to WINSLOW Chase 6030 | | | | 44,000.00 | | | |
| 11 | 9/18/2019 | Victim's USAA 6224 to WINSLOW Chase 6030 | | | | 89,000.00 | | | |
| 12 | 10/30/2019 | Victim's USAA 6224 to WINSLOW Chase 6030 | | | | 27,200.00 | | | |
| 13 | 11/20/2019 | Victim's USAA 6224 to WINSLOW Chase 3531 | | | | 42,000.00 | | | |
| 14 | 12/27/2019 | Victim's USAA 6224 to WINSLOW Chase 3531 | | | | 38,600.00 | | | |
| 15 | 4/3/2020 | Victim's USAA 6224 to WINSLOW Chase 3531 | | | | | 86,000.00 | | |
| 16 | 6/3/2020 | Victim's USAA 6224 to WINSLOW Chase 3531 | | | | | 86,000.00 | | |
| 17 | 10/06/2020 | Check Payment from Victim's Vanguard 4270 to Gold Retailer #1; Coins mailed to Victim's Residence | 1001 | | | | 6,092.97 | | |
| 18 | 10/20/2020 | Check Payment from Victim's Vanguard 4270 to Gold Retailer #1; Coins mailed to WINSLOW's PO Box | 1002 | | | | 40,240.20 | | |
| 19 | 11/10/2020 | Check Payment from Victim's Vanguard 4270 to Gold Retailer #1; Coins mailed to WINSLOW's PO Box | 1003 | | | | 40,211.40 | | |
| 20 | 02/02/2021 | Check Payment from Victim's Vanguard 4270 to Gold Retailer #1; Coins mailed to WINSLOW's PO Box | 1004 | | | | | 39,432.80 | |
| 21 | 03/03/2021 | Check Payment from Victim's Vanguard 4270 to Gold Retailer #1; Coins mailed to WINSLOW's PO Box | 1005 | | | | | 48,546.25 | |
| 22 | 03/10/2021 | Check Payment from Victim's Vanguard 4270 to Gold Retailer #1; Coins mailed to WINSLOW's PO Box | 1006 | | | | | 49,590.84 | |
| 23 | 03/29/2021 | Check Payment from Victim's Vanguard 4270 to Gold Retailer #1; Coins mailed to WINSLOW's PO Box | 1007 | | | | | 48,553.44 | |
| 24 | 04/08/2021 | Check Payment from Victim's Vanguard 4270 to Gold Retailer #1; Coins mailed to WINSLOW's PO Box | 1008 | | | | | 48,090.25 | |
| 25 | 05/04/2021 | Check Payment from Victim's Vanguard 4270 to Gold Retailer #1; Coins mailed to WINSLOW's PO Box | 1009 | | | | | 49,324.75 | |
| | | | | 30,100.00 | 79,500.00 | 268,800.00 | 258,544.57 | 283,538.33 | 920,482.90 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Wires | 15,500.00 | 73,000.00 | 268,800.00 | 172,000.00 | | 529,300.00 |
| Checks | 14,600.00 | 6,500.00 | | 86,544.57 | 283,538.33 | 391,182.90 |
| | | | | | | 920,482.90 |

# EXHIBIT C

**EXHIBIT C - ORDERS FROM GOLD RETAILER #1**

| Order No. | Order Date | Ship Date | Shipping Address | Item Description | Quantity | Cost | Manner of Payment |
|---|---|---|---|---|---|---|---|
| 3125589 | 09/29/20 | 10/12/20 | Victim 1's residence | Three (3) 2020 1 oz American Gold Eagle Coin | 3 | $6,092.97 | Check #1001 for $8,000 drawn on Victim's Vanguard 4270. Amount eventually deducted was $6,092.97. Refund check #13618 in the amount of $1,907.03 was mailed on 10/19/2020 and deposited in Victim 1's Firm 5908 on 11/25/2020. |
| 3148692 | 10/14/20 | 10/26/20 | Winslow's PO Box | Twenty (20) 2020 1 oz American Gold Eagle Coin | 20 | $40,240.20 | Check #1002 for $40,240.20 drawn on Victim 1's Vanguard 4270. |
| 3182607 | 11/04/20 | 11/17/20 | Winslow's PO Box | Twenty (20) 1 oz American Gold Eagle Coin (random years) | 20 | $40,211.40 | Check #1003 for $40,211.40 drawn on Victim 1's Vanguard 4270. |
| 3366417 | 01/27/21 | 02/17/21 | Winslow's PO Box | Twenty (20) 2020 1 oz American Gold Eagle Coin | 20 | $39,432.80 | Check #1004 for $39,432.80 drawn on Victim 1's Vanguard 4270. |
| 3468555 | 02/18/21 | 03/09/21 | Winslow's PO Box | Twenty-five (25) 2021 1 oz. American Gold Eagle Coin | 25 | $48,546.25 | Check #1005 for $48,546.25 drawn on Victim 1's Vanguard 4270. |
| 3508842 | 03/03/21 | 03/16/21 | Winslow's PO Box | Twenty-six (26) 2021 1 oz American Gold Eagle Coin | 26 | $49,590.84 | Check #1006 for $49,590.84 drawn on Victim 1's Vanguard 4270. |
| 3573828 | 03/22/21 | 04/02/21 | Winslow's PO Box | Twenty-six (26) 1 oz American Gold Eagle Coin (random years) | 26 | $48,553.44 | Check #1007 for $48,553.44 drawn on Victim 1's Vanguard 4270. |
| 3612314 | 04/01/21 | 04/15/21 | Winslow's PO Box | Twenty-five (25) 1 oz American Gold Eagle Coin | 25 | $48,090.25 | Check #1008 for $48,090.25 drawn on Victim 1's Vanguard 4270. |
| 3679409 | 04/27/21 | 05/10/21 | Winslow's PO Box | Twenty (20) 2021 1 oz American Gold Eagle Coin and five (5) 1 oz American Gold Eagle Coin (random year) | 25 | $49,324.75 | Check #1009 for $49,324.75 drawn on Victim 1's Vanguard 4270. |
|  |  |  | Totals: | **190 1 oz American Gold Eagle Coins** | 190 | **$370,082.90** |  |

# EXHIBIT D

## EXHIBIT D - WINSLOW'S DEPOSITS FROM GOLD RETAILER #2

| Deposit Date | Check Date | Check No | Amount | Deposit Account | Description | Quantity of Gold Coins Sold |
|---|---|---|---|---|---|---|
| 12/11/2020 | 12/11/2020 | 10401 | 9,205.00 | Chase 6030 | Gold Retailer #2 | 5 |
| 12/14/2020 | 12/12/2020 | 10402 | 9,205.00 | Union 3221 | Gold Retailer #2 | 5 |
| 12/15/2020 | 12/15/2020 | 10406 | 7,416.00 | Chase 6030 | Gold Retailer #2 | 4 |
| 12/18/2020 | 12/18/2020 | 10410 | 7,528.00 | Chase 6030 | Gold Retailer #2 | 6 |
| N/A | 12/18/2020 | Cash | 3,764.00 | N/A | Gold Retailer #2 | |
| 1/4/2021 | 1/4/2021 | 10576 | 11,634.00 | Chase 6030 | Gold Retailer #2 | 6 |
| 1/8/2021 | 1/6/2021 | 10432 | 11,100.00 | Chase 6030 | Gold Retailer #2 | 6 |
| 1/13/2021 | 1/13/2021 | 10436 | 14,784.00 | Chase 6030 | Gold Retailer #2 | 8 |
| 3/5/2021 | 3/5/2021 | 10492 | 38,770.00 | Chase 6030 | Gold Retailer #2 | 23 |
| 4/8/2021 | 4/8/2021 | 10467 | 19,415.00 | Chase 6030 | Gold Retailer #2 | |
| 4/15/2021 | 4/15/2021 | 10469 | 35,300.00 | Chase 6030 | Gold Retailer #2 | 20 |
| 4/20/2021 | 4/20/2021 | 991 | 25,180.00 | Union 3221 | Gold Retailer #2 | |
| 4/20/2021 | 4/20/2021 | 992 | 30,000.00 | Chase 6030 | Gold Retailer #2 | |
| 4/23/2021 | 4/23/2021 | 10913 | 35,540.00 | Chase 6030 | Gold Retailer #2 | |
| 5/25/2021 | 5/25/2021 | 10920 | 37,900.00 | Chase 6030 | Gold Retailer #2 | 20 |
| 12/20/2021 | 12/20/2021 | 10971 | 35,860.00 | Chase 6030 | Gold Retailer #2 | |
| | | | $ 332,601.00 | | | 103 |
| | Estimated Quantity sold by Winslow by Owner of Gold Retailer #2 | | | | | 180 |

**Note #1**: According to Gold Retailer #2, Winslow chose to receive payments in cash and check on 12/18/2020. The total amount of check of $7,528 and cash of $3,764 equaled payments for 6 gold coins. There were no cash deposits in Winslow's Chase or Union banks within 3 months after this date.

**Note #2**: The quantity of gold coins sold was provided by Gold Retailer #2. Blank quantity indicated none provided by Retailer #2. Based on the fluctuation of gold price from December 2020 to December 2021, Gold Retailer #2 estimated Winslow sold a total of 180 gold coins to the Retailer.

# EXHIBIT E

## EXHIBIT E - VICTIM FUNDS TRACEABLE TO DEFENDANT PROPERTY

| No. | Date | Total Amount | Proceeds Amount | Account | Description | Notes |
|---|---|---|---|---|---|---|
| 1 | 9/25/2019 | ($5,000.00) | ($5,000.00) | Chase 6030 | Earnest Money | Escrow Company #1 |
| 2 | 10/25/2019 | ($94,542.19) | ($94,542.19) | Chase 3531 | Down Payment | Escrow Company #1 |
| 3 | 11/1/2019 | (15,111.40) | (15,111.40) | Chase 6030 | Gas Furnace | Retailer #3 |
| 4 | 11/19/2019 | (2,363.00) | (1,438.75) | Chase 6030 | French-door Refrigerator | Retailer #3 |
| 5 | 11/20/2019 | (5,028.14) | (5,028.14) | Chase 6030 | Hot Water Heaters | Retailer #3 |
| 6 | 11/27/2019 | (1,674.69) | (1,674.69) | Chase 6030 | Mortgage Payment | Chase Mortgage Payment Loan 5430 |
| 7 | 12/30/2019 | (1,674.69) | (1,674.69) | Chase 6030 | Mortgage Payment | Chase Mortgage Payment Loan 5430 |
| 8 | 1/29/2020 | (1,674.69) | (1,674.69) | Chase 6030 | Mortgage Payment | Chase Mortgage Payment Loan 5430 |
| 9 | 2/26/2020 | (1,674.69) | (1,674.69) | Chase 6030 | Mortgage Payment | Chase Mortgage Payment Loan 5430 |
| 10 | 3/27/2020 | (1,674.69) | (1,674.69) | Chase 6030 | Mortgage Payment | Chase Mortgage Payment Loan 5430 |
| 11 | 4/28/2020 | (1,674.69) | (1,674.69) | Chase 6030 | Mortgage Payment | Chase Mortgage Payment Loan 5430 |
| 12 | 5/11/2020 | (4,000.00) | (3,990.00) | Chase 6030 | Backyard/Landscaping | Contractor #1 |
| 13 | 5/19/2020 | (2,000.00) | (1,244.32) | Chase 6030 | Backyard/Landscaping | Contractor #1 |
| 14 | 5/26/2020 | (6,000.00) | (6,000.00) | Chase 6030 | Backyard/Landscaping | Contractor #1 |
| 15 | 5/27/2020 | (1,674.69) | (1,674.69) | Chase 6030 | Mortgage Payment | Chase Mortgage Payment Loan 5430 |
| 16 | 6/19/2020 | (3,000.00) | (3,000.00) | Chase 6030 | Backyard/Landscaping | Contractor #1 |
| 17 | 6/26/2020 | (3,500.00) | (3,500.00) | Chase 6030 | Backyard/Landscaping | Contractor #1 |
| 18 | 6/26/2020 | (1,500.00) | (1,500.00) | Chase 6030 | Backyard/Landscaping | Contractor #1 |
| 19 | 6/29/2020 | (2,074.69) | (2,074.69) | Chase 6030 | Mortgage Payment | Chase Mortgage Payment Loan 5430 |
| 20 | 7/2/2020 | (3,000.00) | (3,000.00) | Chase 6030 | Backyard/Landscaping | Contractor #1 |
| 21 | 7/6/2020 | (3,000.00) | (3,000.00) | Chase 6030 | Backyard/Landscaping | Contractor #1 |
| 22 | 7/8/2020 | (4,000.00) | (4,000.00) | Chase 6030 | Backyard/Landscaping | Contractor #1 |
| 23 | 7/28/2020 | (1,705.29) | (1,705.29) | Chase 6030 | Mortgage Payment | Chase Mortgage Payment Loan 5430 |
| 24 | 8/3/2020 | (6,500.00) | (6,500.00) | Chase 6030 | Backyard/Landscaping | Contractor #1 |
| 25 | 8/10/2020 | (4,000.00) | (3,263.93) | Chase 6030 | Backyard/Landscaping | Contractor #1 |
| 26 | 8/24/2020 | (4,300.00) | (3,982.04) | Chase 6030 | Backyard/Landscaping | Contractor #1 |
| 27 | 8/26/2020 | (1,705.29) | (1,705.29) | Chase 6030 | Mortgage Payment | Chase Mortgage Payment Loan 5430 |
| 28 | 9/28/2020 | (1,705.29) | (1,705.29) | Chase 6030 | Mortgage Payment | Chase Mortgage Payment Loan 5430 |
| 29 | 10/27/2020 | (1,705.29) | (1,705.29) | Chase 6030 | Mortgage Payment | Chase Mortgage Payment Loan 5430 |
| 30 | 11/27/2020 | (1,705.29) | (300.34) | Chase 6030 | Mortgage Payment | Chase Mortgage Payment Loan 5430 |
| 31 | 12/28/2020 | (1,705.29) | (1,705.29) | Chase 6030 | Mortgage Payment | Chase Mortgage Payment Loan 5430 |
| 32 | 1/25/2021 | (1,705.29) | (1,705.29) | Chase 6030 | Mortgage Payment | Chase Mortgage Payment Loan 5430 |
| 33 | 2/23/2021 | (1,705.29) | (1,705.29) | Chase 6030 | Mortgage Payment | Chase Mortgage Payment Loan 5430 |
| 34 | 3/23/2021 | (21,705.29) | (21,705.29) | Chase 6030 | Mortgage Payment | Chase Mortgage Payment Loan 5430 |
| 35 | 4/21/2021 | (1,705.29) | (1,705.29) | Chase 6030 | Mortgage Payment | Chase Mortgage Payment Loan 5430 |
| 36 | 5/24/2021 | (3,000.00) | (2,241.01) | Chase 6030 | Hot Tub | Hot Tub Company |
| 37 | 5/24/2021 | (1,000.00) | (241.01) | Union 3221 | Hot Tub | Hot Tub Company |
| 38 | 5/25/2021 | (1,705.29) | (1,705.29) | Chase 6030 | Mortgage Payment | Chase Mortgage Payment Loan 5430 |
| 39 | 6/28/2021 | (1,705.29) | (1,705.29) | Chase 6030 | Mortgage Payment | Chase Mortgage Payment Loan 5430 |
| 40 | 7/28/2021 | (1,727.49) | (1,727.49) | Chase 6030 | Mortgage Payment | Chase Mortgage Payment Loan 5430 |
| 41 | 9/27/2021 | (1,727.49) | (1,617.69) | Chase 6030 | Mortgage Payment | Chase Mortgage Payment Loan 5430 |
| | | ($228,560.71) | ($222,784.02) | | | |

# EXHIBIT F

## EXHIBIT F - VICTIM FUNDS TRACEABLE TO DEFENDANT PROPERTY

| No. | Date of Last Payments | Amount | Description | Clean Money | Fraud Proceeds | Gold Coin Proceeds |
|---|---|---|---|---|---|---|
| 1 | 10/25/2019 | ($99,542.19) | Total Down Payment to Purchase Defendant Property | 0.00 | (99,542.19) | |
| 2 | 11/1/2019 | (15,111.40) | Gas Furnace | 0.00 | (15,111.40) | |
| 3 | 11/19/2019 | (2,363.00) | French-door Refrigerator | (924.25) | (1,438.75) | |
| 4 | 11/20/2019 | (5,028.14) | Hot Water Heaters | 0.00 | (5,028.14) | |
| 5 | 8/24/2020 | (44,800.00) | Backyard/Landscaping | (1,819.71) | (42,980.29) | |
| 6 | 9/27/2021 | (57,715.98) | Mortgage Payments | (1,514.75) | (56,201.23) | (35,282.21) |
| 7 | 2/22/2022 | (4,000.00) | Hot Tub | (1,517.98) | (2,482.02) | (2,482.02) |
| | | ($228,560.71) | | | (222,784.02) | |

Total amount of fraud proceeds traced to Defendant Property:                     (222,784.02)